UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **BOBBY MITCHELL** | **CIVIL ACTION NO. 18-0439** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **LIEUTENANT DAVIS, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Bobby Mitchell is incarcerated at Bossier Medium Correctional Center and is proceeding pro se and in forma pauperis. He filed the instant Complaint on March 29, 2018, under 42 U.S.C. § 1983. He names the following Defendants: Lieutenant Davis, Sgt. Manning, Sgt. Bardeaux, Sheriff Jay Russell, Unknown Nurse, and Unknown Physician.[1] For the following reasons, it is recommended that, with the exception of Plaintiff's conditions of confinement claim against Lieutenant Davis, Plaintiff's claims be **DISMISSED WITH PREJUDICE**.[2]

## Background

Plaintiff alleges that unknown inmates informed him that "Inmate Twin" solicited a "hit/attack" on him. He alleges that, on June 27, 2017, "a note was passed," which stated that Plaintiff was "scheduled" for a stabbing. In the preceding days, Plaintiff also witnessed gang attacks on other inmates.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the conditions of confinement claim against Lieutenant Davis.

Plaintiff writes, "evidently guards heard about the solicited attack" because, on June 28, 2017, they moved him to several different cells. Later that day, Plaintiff asked Officer Williams to transfer him to protective custody, informing Williams that "Inmate Twin" solicited a "hit" on him and that "Baton Rouge" was going to stab him. Plaintiff was, thereafter, moved to Dorm 10, Cell E, a protective custody cell housing six other inmates who were "allegedly under protective waiver."

Either late that night or early the next morning, five or six inmates in Plaintiff's protective custody cell attacked him. The attackers shattered his "rib/abdomen," fractured his cheekbone, and lacerated his eyebrow, arm, back, and shoulder.

Plaintiff faults unidentified officers for failing to heed his request for an "isolation cell," which is a "two-man cell [under] 24-hour lock down." Plaintiff also writes that he "didn't expect the attack to come from the protective custody cell . . . ." [doc. # 9, p. 12].

Plaintiff also faults Lieutenant Davis for failing to respond to his pleas for help sooner. He claims that he yelled for help and that officers in the "key office" were approximately fifty feet away. He also claims that he asked for help through a "speaker button," and that the officers should have seen the attack through video cameras. Officers ultimately responded to the attack approximately twenty-five minutes after it began, and around ten minutes after it ended.[3]

Plaintiff filed an amended pleading on June 4, 2018, raising new allegations. He alleges that, on June 29, 2017, Lieutenant Davis placed him in a "padded rubber room" for three days

---

[3] Plaintiff claims that the attack lasted around fifteen minutes and that officers "came into his cell" about ten to twelve minutes thereafter. However, Plaintiff later alleges that officers responded to the attack around ten minutes after it began. [doc. # 9, p. 11].

"with no sink, no toilet, no bed,[4] no running water," and no hot meals. He could only urinate in a "square cut in the floor board," which "officers flushed from the outside . . . ." He "was forced to urinate on the floor and . . . sleep in it." He could not drink any water, but he was given one glass of milk and two glasses of tea. While in the "rubber room," he endured severe pain stemming from the previous attack.

Plaintiff also alleges that, while a doctor examined his injuries by hand, the doctor "never requested an x-ray." He also claims that the nurse "didn't take [his] wounds too serious," but she did change his bandages and treat his "right side." He was given ibuprofen from June 24, 2017, to July 26, 2017, and he also received unspecified medication for his pain and the damage to his "eye and body . . . ." [doc. # 9, p. 13].

Plaintiff seeks $350,000.00.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is an inmate who has been permitted to proceed in forma pauperis. As an inmate seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for

---

[4] He was given a mat. [doc. # 9, p. 8].

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

*sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

### 2. Defendants Manning and Bardeaux

Plaintiff does not describe what Defendants Manning and Bardeaux did to violate his rights. Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Plaintiff's claims against Manning and Bardeaux should be dismissed with prejudice because Plaintiff does not allege that either Defendant was personally involved.

### 3. Sheriff Jay Russell

Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

Here, Plaintiff does not allege that Sheriff Jay Russell affirmatively participated in any act or implemented an unconstitutional policy so deficient that it constitutes a deprivation of

constitutional rights.  Accordingly, Plaintiff's claims against Sheriff Russell should be dismissed.

**4. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial-of-medical-care claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm.  In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir.

1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff fails to plausibly allege that the unknown nurse and unknown physician were deliberately indifferent to a substantial risk of serious medical harm. As recounted, Plaintiff alleges that, while a doctor examined his injuries by hand, the doctor "never requested an x-ray." He also claims that the nurse "didn't take [his] wounds too serious," but she did change his bandages and treat his "right side." He was given ibuprofen from June 24, 2017, to July 26, 2017, and he also received unspecified medication for his pain and the damage to his "eye and body . . . ." [doc. # 9, p. 13].

Plaintiff simply disagrees with the treating health care professionals' decisions. While he contends that the physician should have ordered an x-ray and that the nurse should have been more attentive, his disagreement or dissatisfaction with the health care professionals' decisions falls far short of establishing deliberate indifference and does not, consequently, state a plausible claim under the Eighth Amendment. See *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977)); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985).[6] Plaintiff's claims of

---

[6] See also *Frazier*, 707 F. App'x at 824 (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred); *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995) (finding no deliberate indifference

inadequate medical care should, therefore, be dismissed with prejudice for failing to state claims on which relief can be granted.

**5. Failure to Protect**

Plaintiff alleges that Defendants failed to protect him from harm. To state a claim, Plaintiff must allege that Defendants' actions amounted to deliberate indifference. "That is, he must allege that they knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). "[M]ere negligence is insufficient to support a claim for deliberate indifference." *Kimball v. Benjamin*, 632 F. App'x 231, 232 (5th Cir. 2016).

Here, Plaintiff first alleges that unidentified officers failed to heed his request for an "isolation cell," which is a "two-man cell [under] 24-hour lock down," after he discovered that other inmates solicited a "hit/attack" on him. Plaintiff, however, fails to identify a responsible Defendant.[7] Accordingly, Plaintiff's first failure-to-protect claim should be dismissed with prejudice.[8]

---

where a plaintiff "complained that no X-rays were taken, that he received no follow-up examination, that he had no cleaning supplies for the wound, and that he received only Tylenol for pain . . . .").

[7] The undersigned instructed Plaintiff to explain which particular Defendant knew of a substantial risk of serious harm. [doc. # 8, p. 3]. The undersigned cautioned that failure to comply with the instruction could result in dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or dismissal under either Federal Rules of Civil Procedure 41(b) or 16(f). *Id.* at 4.

[8] Even assuming, *arguendo*, that Plaintiff identified a responsible Defendant, the undersigned would recommend dismissal. Plaintiff alleges that, after "guards" learned of the impending attack, they moved him three times, eventually placing him in protective custody. Plaintiff alleges that inmates in the protective custody cell attacked him, but he does not allege that any official knew that inmates in the protective custody cell posed a threat to him. In fact,

Plaintiff's second failure-to-protect claim is that Lieutenant Davis failed to respond to his pleas for help sooner. He claims that he yelled for help and that officers in the "key office" were approximately fifty feet away. He also claims that he asked for help through a "speaker button," and that the officers should have seen the attack through video cameras. Officers ultimately responded to the attack approximately twenty-five minutes after it began, and around ten minutes after it ended.

This second claim fares no better than the first. By plaintiff's own admission, the incident occurred suddenly and without warning: he "didn't expect the attack to come from the protective custody cell . . . ." [doc. # 9, p. 12]. That Lieutenant Davis failed to notice the attack through video cameras sooner or hear Plaintiff's pleas for help through the speaker sooner does not evince deliberate indifference. "The failure of employees to notice and stop [an] assault constitutes negligence, not deliberate indifference." *Brumfield v. Natchitoches Par. Det. Ctr.*, 689 F. App'x 309 (5th Cir. 2017).[9] Officers ultimately responded to the attack approximately ten to twenty-five minutes after it began. [doc. # 9, p. 11]. This claim should be dismissed.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, with the exception of Plaintiff's conditions of confinement claim against Lieutenant Davis, Plaintiff's claims be

---

Plaintiff writes that even he "didn't expect the attack to come from the protective custody cell . . . ." [doc. # 9, p. 12]. Plaintiff does not, in other words, allege that any official acted with the requisite deliberate indifference. See *Vela v. Garcia*, No. 16-20701, 2018 WL 1559932, at *2 (5th Cir. Mar. 28, 2018) ("[T]o state a valid failure-to-protect claim, [a plaintiff] must allege the [] personnel knew of a substantial risk of serious harm and failed to act.").

[9] See *Little v. Spears*, 55 F.3d 632 (5th Cir. 1995) ("To the extent that [the plaintiff] contends that prison officials acted negligently in failing to break up the attack sooner, he does not have a *Bivens* claim.").

**DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 6th day of August, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE